# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BELINDA GUTIERREZ-RODRIGUEZ, on behalf of herself and all others similarly situated,<br><br>                              Plaintiff,<br><br>v.<br><br>R.M. GALICIA, INC. DBA PROGRESSIVE MANAGEMENT SYSTEMS,<br><br>                             Defendant. | Case No.: 16-CV-0182 H BLM<br><br>**ORDER:**<br><br>**(1) CERTIFYING CLASS FOR SETTLEMENT PURPOSES;**<br><br>**(2) PRELIMINARILY APPROVING CLASS SETTLEMENT;**<br><br>**(3) APPROVING CLASS NOTICE;**<br><br>**(4) APPOINTING RUST CONSULTING, INC., AS CLAIMS ADMINISTRATOR; and**<br><br>**(5) SCHEDULING FINAL APPROVAL HEARING** |

On August 21, 2017, Plaintiff Belinda Gutierrez-Rodriguez ("Plaintiff") filed an unopposed motion seeking provisional class certification, preliminary approval of a proposed class action settlement, approval of a proposed dissemination of class notice, appointment of Rust Consulting, Inc. ("Rust"), as claims administrator, and a final

approval schedule. (Doc. No. 55-1.) On September 12, 2017, the Court questioned whether the parties needed to designate a *cy pres* recipient to satisfy Lane v. Facebook, Inc., 696 F.3d 811, 821 (9th Cir. 2012). (Doc. No. 56.) In response, the parties proposed the Privacy Rights Clearinghouse and the Legal Aid Society of San Diego as *cy pres* recipients. (Doc. No. 57.)

The Court held a hearing on the motion on October 13, 2017. Alexis M. Wood and Ronald Marron appeared for Plaintiff. Debbie P. Kirkpatrick appeared for Defendant. For the following reasons, the Court grants Plaintiff's motion and sets a schedule for further proceedings.

## **BACKGROUND**

### A. Factual and Procedural Background

Plaintiff alleges that, beginning around March 2015, Defendant violated the Telephone Consumer Protection Act ("the TCPA"), 47 U.S.C. §§ 227 *et seq.*, by using an automatic telephone dialing system ("ATDS") or artificial/pre-recorded voice system to call cellular telephones without prior express consent. (Doc. No. 1 ¶ 29.) Defendant is a debt collector that performs first- and third-party debt collection services, primarily for the healthcare industry. (Id. ¶ 2.) Its alleged business practice is to contact debtors by calling telephone numbers that the debtors themselves provided. (Id. ¶ 3.) Plaintiff claims that, when such attempts at contact are unsuccessful, Defendant locates new telephone numbers associated with an alleged debtor "through unreliable skip tracing methods," which yields numbers that Defendant "necessarily lack[s] express consent to call." (Id.)

Plaintiff alleges that she began receiving unsolicited calls from Defendant on her cell phone in March 2015. (Id. ¶ 18.) "During each of these calls, [Defendant] left prerecorded and artificial voicemail messages." (Id. ¶ 22.) Plaintiff claims she did not provide Defendant or its agents prior express consent for the calls and that she incurred a charge for the incoming calls, which "were not for emergency purposes." (Id. ¶¶ 24, 25, 26.) The calls seem to have been an attempt to collect a debt from Plaintiff's adult son,

even though Plaintiff was not the guarantor on his debt and "was not even aware that such debt had been incurred until after she began receiv[ing] the unsolicited and harassing calls" from Defendant. (Doc. No. 55-1 at 3.)

Plaintiff brought this class action on behalf of all individuals who "(1) received a telephone call from Defendant or its agents; (2) on his or her cellular telephone number; (3) through the use of any automatic telephone dialing system or artificial or pre-recorded voice system as set forth in 47 U.S.C. § 227(b)(1)(A)(3); and (4) where Defendant has no record of prior express consent for such individual to make such call, within four years prior to the filing of the Complaint through the date of final approval." (Doc. No. 1 ¶ 29.) Plaintiff seeks statutory damages and injunctive relief. (Id. ¶¶ 53-58.)

Plaintiff filed a class action complaint on January 25, 2016, and Defendant answered on March 1, 2016. (Doc. Nos. 1; 8.) During discovery, Plaintiff sought "a list of all calls made during the class period," including corresponding details such as "the telephone number called, the date the call was placed, the manner in which the number was called, where Defendant obtained that number . . . and evidence, to the extent it exists, that Defendant had consent to call." (Doc. No. 55-2, Marron Decl. ¶ 3.) Because Defendant claimed that producing this information would burden and disrupt "its small employee-owned business," the parties developed a sampling protocol: Defendant would search its records of telephone calls made using LiveVox or TCN[1] since January 25, 2012 to identify telephone numbers appearing in a field other than the patient or guarantor fields. (Id. ¶ 4.) Defendant ultimately identified 61,939 unique cellular telephone numbers. (Id.) In the process, Defendant also discovered a "glitch" in its system that, apparently, led to some of the calls of which Plaintiff complained. (Id.)

Having reviewed the sampling protocol's results, the parties agreed to participate in

---

[1] The Court's research suggests that these are predictive dialers. See *Company Overview of LiveVox, Inc.*, BLOOMBERG, https://www.bloomberg.com/research/stocks/private/snapshot.asp?privcapId=897918 (last visited October 16, 2017); *About Us*, TCN, https://www.tcnp3.com/home/company/about-us (last visited October 16, 2017).

private mediation. (Doc. No. 55-1 at 5.) Following a full-day mediation before the Honorable Morton Denlow (Ret.) of JAMS on December 20, 2016, the parties reached a classwide settlement in principle. (Doc. No. 55-2, Marron Decl. ¶ 9.) Judge Denlow has extensive experience with TCPA cases. (Id.) By the present motion, Plaintiff seeks approval of the settlement class, preliminary approval of the settlement agreement and class notice, and a scheduling order for further proceedings. (Doc. No. 55-1.)

**B. Proposed Settlement Agreement**

The proposed settlement agreement would create an "Injunctive Settlement Class" as well as a narrower "Damages Settlement Subclass." (See Doc. No. 55-2, Marron Decl. Ex. 1 § 2.19) ("Class Action Settlement Agreement and Release") (hereinafter "Proposed Settlement").) The Injunctive Settlement Class comprises "all individuals called by [Defendant] on their cellular telephones during the Class Period"—that is, "January 25, 2012 through and including the date the settlement is preliminarily approved." (Id.) The Damages Settlement Subclass consists of the approximately 61,939 persons who "received one or more calls from [Defendant], (2) placed by LiveVox or TCN and/or featuring a prerecorded or artificial voice messages [*sic*]; (3) on his or her cellular telephone number; (4) was not listed in the patient or guarantor fields on the account in which calls were placed; (5) from January 25, 2012 through the date of preliminary approval; and (6) whose telephone numbers are identified in the Damages Class List." (Id. § 2.12.)

Under the Proposed Settlement, Defendant will establish a settlement fund of $1,500,000 to resolve the litigation involving Damages Settlement Subclass members. (Id. § 6.01.) This amount will pay approved claims—"[o]nly one claim for each phone number called shall be permitted"—and any and all settlement costs, defined as "all costs incurred in the litigation by Plaintiff, including but not limited to Plaintiff's attorneys' fees, costs of suit, cost of litigation, cost of notice and claims administration." (Id. §§ 2.33; 6.01.) For its attorneys' fees and costs, Plaintiff's counsel agrees to request no more than 30% of the settlement fund. (Id. § 7.01.) The cost of notice and claims administration are estimated to be $110,815, assuming "the normal take rate in TCPA cases" of 1-5%. (Doc. No. 55-2,

Marron Decl. ¶ 17.) The parties request appointment of Rust as claims administrator. (Doc. No. 55-1 at 24; Proposed Settlement § 2.06.)

The settlement fund will also be used to pay the class representative an incentive award of $7,500. (Id. § 7.02.) Any amount remaining in the settlement fund as of the final distribution date will go to a *cy pres* recipient "mutually selected by the Parties and subject to Court approval." (Id. § 10.04(f).) In response to the Court's inquiry regarding *cy pres* recipients under Lane v. Facebook, Inc., 696 F.3d 811, 821 (9th Cir. 2012), the parties proposed the Privacy Rights Clearinghouse and the Legal Aid Society of San Diego. (Doc. Nos. 56, 57.)

As for injunctive relief, Defendant will consent to two injunctions against it. (See Proposed Settlement §§ 5.01, 5.02). The first injunction would require that Defendant, "in a uniform manner, record in its account management system all consent it receives to call cellular telephone numbers using its dialer(s), and retain all such documents or records of consent for a period of no less than two (2) years"; "use reasonable means (e.g., third-party databases) to search and scrub all such numbers to determine whether a given number is a cellular number" and "keep a record of all such numbers identified as a cellular number"; not call cellular numbers using its dialer(s) unless Defendant has a record of consent to do so; and not use pre-recorded or artificial voice messages unless Defendant obtains and records consent to do so. (Id. § 5.01.)

The second injunction contemplated in the Proposed Settlement pertains to Defendant's conduct in any future TCPA litigation brought by an Injunctive Settlement Class member. (See id. § 5.02.) Specifically, the injunction would bar Defendant from raising as a defense, or requiring said class member to establish, that the dialing equipment used to call a person's cellular telephone number was an "ATDS" as defined by the TCPA, provided that the call(s) involved in that claim were made from January 25, 2012 through the date of preliminary approval of the agreement. (Id.) This injunction would not, however, apply to such claims brought on a classwide basis. (Id. § 5.2.3.)

Class members can opt-out by submitting a written request to the claims

administrator, and they can object to the proposed settlement by filing an objection to the Court. (Id. §§ 13.01, 13.02.)

# **DISCUSSION**

When the parties reach a settlement agreement prior to class certification, the Court is under an obligation to "peruse the proposed compromise to ratify both the propriety of the certification and the fairness of the settlement." Staton v. Boeing Co., 327 F.3d 938, 952 (9th Cir. 2003). Thus, the Court must assess whether a class exists and then consider whether the proposed settlement is "fundamentally fair, adequate, and reasonable." Id. (citation omitted).

## I.  **Class Certification**

In this case, Plaintiff seeks to certify a class pursuant to Federal Rule of Civil Procedure 23(b)(3) for purposes of settlement only. (See Doc. No. 55-1 at 21.) The class includes all individuals who "(1) received a telephone call from Defendant or its agents; (2) on his or her cellular telephone number; (3) through the use of any automatic telephone dialing system or artificial or pre-recorded voice system as set forth in 47 U.S.C. § 227(b)(1)(A)(3); and (4) where Defendant has no record of prior express consent for such individual to make such call, within four years prior to the filing of the Complaint through the date of final approval." (Doc. No. 1 ¶ 29.) A plaintiff seeking to certify a class under Rule 23(b)(3) must first satisfy the requirements of Rule 23(a). Fed. R. Civ. P. 23(b); Wal-Mart Stores, Inc. v. Dukes, 131 S. Ct. 2541, 2548 (2011). Once subsection (a) is satisfied, the purported class must then fulfill Rule 23(b)(3)'s requirements. Id.

### a.  **Rule 23(a) Requirements**

Rule 23(a) provides that one or more plaintiffs may sue on behalf of class members if all of the following requirements are met: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation. Fed. R. Civ. P. 23(a).

The numerosity prerequisite is met if "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Plaintiff estimates that the Damages Settlement subclass alone contains 61,939 members. (Doc. No. 55-1 at 7.) Accordingly,

the proposed class satisfies the numerosity prerequisite. See, e.g., Rannis v. Recchia, 380 F. App'x 646, 651 (9th Cir. 2010) ("In general, courts find the numerosity requirement satisfied when a class includes at least 40 members.").

The commonality prerequisite is met if "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Rule 23(a)(2) is construed permissively. Hanlon v. Chrysler Corp., 150 F.3d 1011, 1019 (9th Cir. 1998). "[T]he key inquiry is not whether the plaintiffs have raised common questions, 'even in droves,' but rather, whether class treatment will 'generate common answers apt to drive the resolution of the litigation.'" Abdullah v. U.S. Sec. Assoc., Inc., 731 F.3d 952, 957 (9th Cir. 2013) (quoting Wal-Mart Stores, 131 S. Ct. at 2551). Here, there are several questions of law and fact that are common to the class. (See Doc. No. 1 ¶ 35.) Importantly, whether Defendant used an ATDS or an artificial or pre-recorded voice system to call cellular phones in violation of the TCPA involves a common question of law that satisfies Rule 23(a)'s commonality requirement. Cf. Bee, Denning, Inc. v. Capital All. Grp., 310 F.R.D. 614, 625-26 (S.D. Cal. 2015) (concluding that whether defendant sent fax advertisements in violation of the TCPA "clearly involves a common question of law that will drive resolution of the classwide claims"). In addition, although Plaintiff did not raise the issue of individualized consent with respect to commonality, the Court notes that Plaintiff has limited the purported class to those persons who were "not listed in the patient or guarantor fields on the account in which calls were placed." (Proposed Settlement § 2.12.) There is no evidence that any purported class members gave prior express consent to Defendant's placement of the calls at issue, or that Defendant obtained the persons' cell phone numbers in the course of the underlying healthcare transactions in which the alleged debts were incurred. See Meyer v. Portfolio Recovery Assocs., LLC, 707 F.3d 1036, 1042 (9th Cir. 2012). Thus, at this provisional stage, the Court is satisfied that individualized issues of consent do not preclude a finding of commonality. Id. Accordingly, the commonality prerequisite is met.

Typicality requires that "the claims or defenses of the representative parties [be] typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). A plaintiff's claims

are "'typical' if they are reasonably co-extensive with those of absent class members." Hanlon, 150 F.3d at 1020. Typicality requires that a representative plaintiff "possess the same interest and suffer the same injury as the class members." Gen. Tel. Co. of the Sw. v. Falcon, 457 U.S. 147, 156 (1982). Here, both Plaintiff and the purported class members held the same position and claim the same injury—namely, that they received calls on their cell phones that were placed by Defendant using "LiveVox or TCN and/or featuring a prerecorded or artificial voice messages [*sic*]" without their prior express consent. (Doc. No. 55-1 at 7.) Because Plaintiff's claims are reasonably co-extensive with those of absent class members, the typicality prerequisite is met.

Adequacy of representation requires that the class representative be able to "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Representation is adequate if the plaintiff and class counsel (1) do not have any conflicts of interest with any other class members and (2) will prosecute the action vigorously on behalf of the class. Hanlon, 150 F.3d at 1020. Here, there does not appear to be any conflicts of interest between Plaintiff and the purported class members. Plaintiff and her counsel have vigorously prosecuted the interests of the class, (see Doc. No. 55-7, Gutierrez-Rodriguez Decl. ¶ 5; Doc. No. 55-2, Marron Decl. ¶¶ 2-7), and class counsel has extensive experience in class actions and complex litigation, including TCPA cases, (see id. ¶¶ 35, 36). Accordingly, Plaintiff and her counsel are adequate representatives of the proposed class. For the foregoing reasons, Plaintiff has met all of the requirements of Rule 23(a).

### b. Rule 23(b)(3) Requirements

#### i. Predominance

The predominance inquiry tests whether the proposed class is "sufficiently cohesive to warrant adjudication by representation." Hanlon, 150 F.3d at 1022 (quoting Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 623 (1997)). Predominance requires more than proof of common issues of law and fact. Id. Rather, the common questions should "present a significant aspect of the case and . . . be resolved for all members of the class in a single adjudication." Id. (citation omitted). Thus, "a central concern of the Rule 23(b)(3)

predominance test is whether adjudication of common issues will help achieve judicial economy." Vinole v. Countrywide Home Loans, 571 F.3d 935, 944 (9th Cir. 2009) (internal quotation marks and citation omitted).

Here, a single adjudication will resolve the central issue of the case—namely, whether Defendant violated the TCPA by calling class members, without their prior express consent, using an ATDS or an artificial or pre-recorded voice system. (Doc. No. 1 ¶ 35(a)). There do not appear to be individualized consent issues that should preclude a finding of predominance, given that the purported class is defined, specifically, as persons whose numbers were not listed as those of patients or guarantors—indicating they did not give consent to being called—and who received one or more calls from Defendant placed by LiveVox or TCN "and/or featuring a prerecorded or artificial voice messages [*sic*]." (Proposed Settlement § 2.12.) Thus, the proposed class is "sufficiently cohesive to warrant adjudication by representation," and the predominance requirement is met. See Hanlon, 150 F.3d at 1022.

### ii. Superiority

The superiority inquiry requires determination of "whether objectives of the particular class action procedure will be achieved in the particular case." Hanlon, 150 F.3d at 1023 (citation omitted). Notably, the class-action method is considered to be superior if "classwide litigation of common issues will reduce litigation costs and promote greater efficiency." Valentino v. Carter-Wallace, Inc., 97 F.3d 1227, 1234 (9th Cir. 1996) (citation omitted). Here, there is no evidence that absent class members wish to pursue their claims individually. Moreover, any class member who wishes to pursue an individual claim may elect not to participate in the settlement agreement. (Proposed Settlement § 13.01.) Accordingly, the superiority requirement is met here, and Plaintiff has met the requirements of Rule 23(b)(3).

## II. The Settlement

Rule 23(e) requires the Court to determine whether a proposed settlement is "fundamentally fair, adequate, and reasonable." Staton, 327 F.3d at 959 (quoting Hanlon,

150 F.3d at 1026). To make this determination, the Court must consider a number of factors, including: (1) the strength of plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed, and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement. Id. Furthermore, the settlement may not be the product of collusion among the negotiating parties. In re Mego Fin. Corp. Sec. Litig., 213 F.3d 454, 458 (9th Cir. 2000).

Because some of these factors cannot be fully assessed until the Court conducts the final approval hearing, "a full fairness analysis is unnecessary at this stage." Alberto v. GMRI, Inc., 252 F.R.D. 652, 665 (E.D. Cal. 2008) (citation omitted). At the preliminary approval stage, the Court need only review the parties' proposed settlement to "determine whether it is within the permissible range of possible judicial approval." See id. at 666 (citation omitted). In determining whether a proposed settlement should be approved, the Ninth Circuit has a "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." Class Plaintiffs v. Seattle, 955 F.2d 1268, 1276 (9th Cir. 1992). Additionally, the Ninth Circuit favors deference to the "private consensual decision of the [settling] parties," particularly where the parties are represented by experienced counsel and negotiation has been facilitated by a neutral party. See Rodriguez v. West Publ'g Corp., 563 F.3d 948, 965 (9th Cir. 2009).

After reviewing the proposed settlement in light of the above factors and the current stage of the litigation, the Court concludes that preliminary approval is appropriate. The proposed settlement appears to be the result of serious, informed, and non-collusive negotiations. See Tijero v. Aaron Bros., Inc., 301 F.R.D. 314, 324 (N.D. Cal. 2013). The discovery process in this case involved party and third-party discovery, extensive meet and confer efforts by counsel, and the development of a mutually agreed-upon sampling protocol to identify the unique telephone numbers constituting the Damages Settlement

Subclass. (Doc. No. 55-2, Marron Decl. ¶¶ 3-6.) While developing and running the protocol, the parties agreed to participate in private mediation to explore the possibility of settlement. (Id. ¶ 7.) A JAMS mediator with extensive experience with TCPA cases supervised a day-long mediation session, and the parties reached a classwide settlement in principle. (Id. ¶¶ 8-9.) The parties then worked to finalize the settlement's terms over the next few months and also conducted confirmatory discovery to ensure the accuracy of the information Defendant provided during mediation. (Id. ¶ 10).

Class counsel is experienced with TCPA actions and believes that Plaintiff's claims are meritorious, but he believes that the settlement offers meaningful relief and is in the proposed class's best interests. (Doc. No. 55-1 at 15; Doc. No. 55-2, Marron Decl. ¶¶ 20-21, 35-36.) The proposed settlement fund will contain $1,500,000. (Proposed Settlement § 6.01.) The amount remaining after payment of all Settlement Costs will be paid to Damages Settlement Subclass members on a pro rata basis depending on the number of members' valid submitted claims. (Id. §§ 6.01, 6.02.) Class counsel estimates that, for a Damages Settlement Subclass of 62,000 members, each subclass member will receive $24. (Doc. No. 55-1 at 16.) At a 1% claim rate, approximately 620 persons would receive $1,462.09, and at a 5% claim rate, approximately 3,100 persons would receive $292.42. (Id. at 18.) Class counsel represents that the normal "take rate" in TCPA cases is 1-5%. (Doc. No. 55-2, Marron Decl. ¶ 17.)

The Injunctive Class, in turn, receives injunctive relief to the effect that Defendant will not call phone numbers for which it has no record of consent. (Proposed Settlement § 5.13.) Further, the Injunctive Class waives its right to sue on a classwide basis, but secures Defendant's admission that it uses an ATDS, which, Class counsel asserts, "is often the most difficult and costly element of a TCPA claim to prove." (Doc. No. 55-1 at 16.) Moreover, members of the Injunctive Settlement Class or Damages Settlement Subclass may opt out or object to the settlement's fairness. (Proposed Settlement §§ 13.01, 13.02.)

The request for attorney's fees and costs of no more than 30% of the settlement fund is within the permissible range of acceptable attorneys' fees in Ninth Circuit cases.

(Proposed Settlement § 7.01); see Vasquez v. Coast Valley Roofing, Inc., 266 F.R.D. 482, 491 (E.D. Cal. 2010) ("The typical range of acceptable attorneys' fees in the Ninth Circuit is 20% to 33 1/3 % of the total settlement value, with 25% considered the benchmark."). Additionally, the proposed incentive award of $7,500 for the named Plaintiff appears reasonable considering that, throughout this litigation, Plaintiff regularly met with Class counsel, assisted counsel with discovery served on her, and provided supplemental responses. (Doc. No. 55-7, Gutierrez-Rodriguez Decl. ¶ 5.) $7,500 is approximately 0.5% of the $1.5 million settlement fund. Cf. In re Mago, 213 F.3d at 463 (affirming incentive award of $5,000 to two plaintiff representatives of 5,400 potential class members in $1.75 million settlement, where incentive payment constituted only 0.57% of the settlement fund). The settlement administration costs, estimated to be $110,815, appear reasonable. (See Doc. No. 55-1 at 8). And Rust, the parties' proposed administrator, appears to be an appropriate choice in light of its extensive experience administering a variety of class action settlements. (See Doc. No. 55-8, Roberts Decl. ¶¶ 2-3.)

Finally, the Court considers the propriety of the parties' proposed *cy pres* recipients. The parties may designate a *cy pres* recipient for unclaimed settlement funds, provided it qualifies "as 'the next best distribution' to giving the funds directly to class members. Dennis v. Kellogg Co., 697 F.3d 858, 865 (9th Cir. 2012) (quoting Six Mexican Workers v. Ariz. Citrus Growers, 904 F.2d 1301, 1308 (9th Cir. 1990)). There must be "a driving nexus between the plaintiff class and the *cy pres* beneficiaries." Nachshin v. AOL, LLC, 663 F.3d 1034, 1038 (9th Cir. 2011); *see also* Lane, 969 F.3d at 821. To that end, a *cy pres* award must be guided by the underlying statute's objectives and the silent class members' interests, and "must not benefit a group 'too remote from the plaintiff class.'" Dennis, 697 F.3d at 865 (quoting Six Mexican Workers, 904 F.2d at 1308).

Here, the parties propose the Privacy Rights Clearinghouse ("PRC") and the Legal Aid Society of San Diego, Inc. ("LASSD") as *cy pres* recipients. (Doc. No. 57.) Accordingly, the Court must determine whether a "driving nexus" exists between these entities and the plaintiff class, see Nachshin, 663 F.3d at 1038, and whether a *cy pres* award

to these entities would further the TCPA's objectives, see Dennis, 697 F.3d at 865. The TCPA's purpose is "to prohibit the use of ATDSs to communicate with others by telephone in a manner that would be an invasion of privacy." Satterfield v. Simon & Schuster, Inc., 569 F.3d 946, 954 (9th Cir. 2009) (citation omitted),

PRC is a nonprofit consumer advocacy and education organization located in San Diego that responds to specific consumers' privacy-related complaints "and when appropriate, intercede[s] on their behalf and/or refer[s] them to the proper organizations for further assistance." *Mission and Goals*, PRIVACY RIGHTS CLEARINGHOUSE, https://www.privacyrights.org/about/mission-and-goals (last visited October 16, 2017). Additionally, PRC offers educational materials, such as consumer guides on privacy issues, hosts an online "Question Center" for consumers seeking information about ways to protect their privacy, and provides "information to consumer advocates and policymakers regarding the consumer questions and complaints PRC receives." *Services*, PRIVACY RIGHTS CLEARINGHOUSE, https://www.privacyrights.org/about/services (last visited October 16, 2017). And although PRC is located in San Diego, the organization appears to have nationwide impact. Cf. Couser, 2017 WL 2312080, at *2 (approving *cy pres* distribution to entity whose consumer-privacy work had "nationwide impact"). PRC has, for example, submitted comments to federal agencies, including the Federal Communications Commission, the Federal Trade Commission, and the Consumer Financial Protection Bureau. See *Policy & Reports*, PRIVACY RIGHTS CLEARINGHOUSE, https://www.privacyrights.org/policy-reports (last visited October 16, 2017). In sum, because PRC is an organization "that works to protect and defend consumer privacy," the Court deems PRC an appropriate *cy pres* recipient. See Aboudi v. T-Mobile USA, Inc., No. 12-CV-2169, 2015 WL 4923602, at *5 (S.D. Cal. Aug. 18, 2015).

LASSD is a nonprofit legal services organization serving low-income individuals in a variety of practice areas, including health, housing, immigration, child custody, and federal tax law. *What We Do*, LEGAL AID SOCIETY OF SAN DIEGO, https://www.lassd.org/what-we-do (last visited October 16, 2017). Most relevant here,

LASSD's Consumer Protection Division offers free legal services for low-income persons experiencing harassment by debt collectors and hosts free debt collection lawsuit clinics. *Consumer Protection*, LEGAL AID SOCIETY OF SAN DIEGO, https://www.lassd.org/area/consumer-protection (last visited October 16, 2017). Although LASSD may support noble causes, it "must have more than a tenuous connection" to the class and this litigation. See Couser v. Comenity Bank, No. 12-CV-2484, 2017 WL 2312080, at *4 (S.D. Cal. May 26, 2017) (citing Lane, 969 F.3d at 821). The majority of LASSD's work appears to be "unrelated to the invasion of privacy interests contemplated by the TCPA," and, furthermore, LASSD primarily serves residents of San Diego, making it unlikely that class members residing outside of San Diego would indirectly benefit from a *cy pres* distribution to LASSD. Cf. id. (declining to approve *cy pres* award to Bet Tzedek Legal Services in TCPA class action against debt collector, because majority of Bet Tzedek's work was "unrelated to the invasion of privacy interests contemplated by the TCPA," and because an award to Bet Tzedek, an organization serving Los Angeles residents, was unlikely to indirectly benefit nationwide class members). Thus, on this record, the parties have not made a sufficient showing that a *cy pres* distribution to LASSD would "bear[] a substantial nexus to the interests of the class members," see Lane, 969 F.3d at 821, and the Court declines to approve LASSD as a *cy pres* recipient.

For the foregoing reasons, the Court grants preliminary approval of the proposed settlement. The Court appoints Rust as claims administrator. The Court approves PRC, but not LASSD, as a *cy pres* recipient of undistributed settlement funds. The Court reserves judgment on the reasonableness of the attorneys' fees and administration costs for the final approval hearing.

### III. Approving Class Notice

The class notice must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." See Mullane v. Cent. Hanover Bank & Tr. Co., 339 U.S. 306, 314 (1950). In addition, the class notice must satisfy the content requirements of Rule

23(c)(2)(B), which provides the notice must clearly and concisely state in plain, easily understood language:

> (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3). Fed. R. Civ. P. 23(c)(2)(B).

### a. Content of the Notice

Here, the content of the notice is adequate. In clear, understandable language, it provides the following: a description of the lawsuit; a description of the settlement classes (Injunctive Settlement Class and Damages Subclass); an explanation of the material elements of the settlement; a statement that class members have the right to exclude themselves from, or object to, the settlement, and a description of how class members may do so; and a description of the fairness hearing. (See Doc. No. 55-5.)

### b. Method of Notice

The proposed method of notice is reasonable. Damages Settlement Subclass members will receive individual notice by first class mail. (Proposed Settlement § 9.02.) Any returned, non-delivered class notice will be re-mailed to a forwarding address if determinable. (Id. § 9.03.)[2] The claims administrator will maintain a settlement website that will contain class information—such as class members' right to participate in the settlement and to exclude themselves from, or object to, the settlement—and related documents, including, "[a]t a minimum," the Settlement Agreement, the Notice, a "Question & Answer" Form Notice, the Preliminary Approval Order, a Claim Form, which can be completed and submitted electronically, the operative complaint, the application for attorneys' fees and costs, and the Final Approved Order. (Id. § 9.05.) The claims administrator will also implement a "targeted programmatic digital media campaign that

---

[2] Rust informed the Court that it has located names and addresses associated with 56,279 of the 61,939 telephone numbers identified by the parties' sampling protocol. (Doc. No. 58 at 1.)

will result in a minimum of 10 million impressions." (Id. § 9.07.) Finally, the administrator will establish a toll-free telephone number for claim submission and settlement-related inquiries. (Id. § 9.05.)

Having reviewed the content and proposed method of providing notice, the Court determines the notice is adequate and sufficient to inform the class members of their rights. Accordingly, the Court approves the form and manner of giving notice of the proposed settlement.

### IV. Scheduling Fairness Hearing

The Court schedules the final approval hearing for March 19, 2018, at 10:30 a.m. Defendant must provide an updated class list to the settlement administrator by November 1, 2017. Plaintiff must file a motion for attorneys' fees on or before December 27, 2017. The settlement administrator must mail class notices by November 15, 2017. Potential class members must return their claims or other responses by January 31, 2018. Plaintiff must file a motion for service awards on or before December 27, 2017. Plaintiff must file a motion for final approval of the settlement on or before March 5, 2018.

## **CONCLUSION**

The Court approves Plaintiff's request for provisional certification of the class for purposes of settlement, Plaintiff's request for preliminary approval of the proposed settlement, and the form and manner of the notice of the proposed settlement to the class members. Additionally, the Court sets the final approval hearing for March 19, 2018, at 10:30 a.m. Plaintiff must file any motions for fee awards and incentive awards on or before December 27, 2017. Plaintiff must file a motion for final approval of the settlement on or before March 5, 2018.

**IT IS SO ORDERED.**

DATED: October 16, 2017

MARILYN L. HUFF, District Judge
UNITED STATES DISTRICT COURT