# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BELINDA GUTIERREZ-RODRIGUEZ, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>R.M. GALICIA, INC. DBA PROGRESSIVE MANAGEMENT SYSTEMS,<br><br>Defendant. | Case No.: 16-CV-00182-H-BLM<br><br>**ORDER:**<br><br>**(1) GRANTING PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; and**<br><br>[Doc. No. 64]<br><br>**(2) GRANTING PLAINTIFF'S MOTION FOR ATTORNEYS' FEES, COSTS AND INCENTIVE PAYMENT**<br><br>[Doc. No. 61] |

On December 27, 2017, Plaintiff Belinda Gutierrez-Rodriguez ("Plaintiff") filed an unopposed motion for attorneys' fees, costs and incentive payment. (Doc. No. 61.) On March 5, 2018, Plaintiff filed a motion for final approval of class action settlement. (Doc. No. 64.) On March 23, 2018, the Court held a final approval hearing on the matter pursuant to Federal Rule of Civil Procedure 23(e)(2). (Doc. No. 66.) Kas L. Gallucci and Alexis M. Wood appeared for Plaintiff. (Id.) Debbie P. Kirkpatrick appeared for Defendant R.M. Galicia Inc. dba Progressive Management Systems ("Defendant"). (Id.) For the reasons discussed below, the Court **GRANTS** the motion for final approval of the settlement and

the motion for attorneys' fees, costs and incentive payment.

## BACKGROUND

### I. Factual and Procedural Background

Plaintiff alleges that, beginning around March 2015, Defendant violated the Telephone Consumer Protection Act ("the TCPA"), 47 U.S.C. §§ 227 *et seq.*, by using an automatic telephone dialing system ("ATDS") or artificial/pre-recorded voice system to call cellular telephones without prior express consent. (Doc. No. 1 ¶¶ 18, 29.) Defendant is a debt collector that performs first- and third-party debt collection services, primarily for the healthcare industry. (Id. ¶ 2.) Its alleged business practice is to contact debtors by calling telephone numbers that the debtors themselves provided. (Id. ¶ 3.) Plaintiff alleges that, when such attempts at contact are unsuccessful, Defendant locates new telephone numbers associated with an alleged debtor "through unreliable skip tracing methods," which yields numbers that Defendant "necessarily lack[s] express consent to call." (Id.)

Plaintiff alleges that she began receiving unsolicited calls from Defendant on her cell phone in March 2015. (Id. ¶ 18.) "During each of these calls, [Defendant] left prerecorded and artificial voicemail messages." (Id. ¶ 22.) Plaintiff claims she did not provide Defendant or its agents prior express consent for the calls and that she incurred a charge for the incoming calls, which "were not for emergency purposes." (Id. ¶¶ 24-26.) The calls seem to have been an attempt to collect a debt from Plaintiff's adult son, even though Plaintiff was not the guarantor on his debt and "was not even aware that such debt had been incurred until after she began receiv[ing] the unsolicited and harassing calls" from Defendant. (Doc. No. 55-1 at 3.)

Plaintiff brought this class action on behalf of all individuals who "(1) received a telephone call from Defendant or its agents; (2) on his or her cellular telephone number; (3) through the use of any automatic telephone dialing system or artificial or pre-recorded voice system as set forth in 47 U.S.C. § 227(b)(1)(A)(3); and (4) where Defendant has no record of prior express consent for such individual to make such call, within four years

2

prior to the filing of the Complaint through the date of final approval." (Doc. No. 1 ¶ 29.) Plaintiff sought statutory damages and injunctive relief. (Id. ¶¶ 53-58.)

Plaintiff filed a class action complaint on January 25, 2016, and Defendant answered on March 1, 2016. (Doc. Nos. 1, 8.) During discovery, Plaintiff sought "a list of all calls made during the class period," including corresponding details such as "the telephone number called, the date the call was placed, the manner in which the number was called, where Defendant obtained that number . . . and evidence, to the extent it exists, that Defendant had consent to call." (Doc. No. 61-2, Marron Decl. ¶ 35.) Because Defendant claimed that producing this information would burden and disrupt "its small employee-owned business," the parties developed a sampling protocol: Defendant would search its records of telephone calls made using LiveVox or TCN[1] since January 25, 2012 to identify telephone numbers appearing in a field other than the patient or guarantor fields. (Id. ¶ 36.) Defendant ultimately identified 61,939 unique cellular telephone numbers. (Id.) In the process, Defendant also discovered a "glitch" in its system that, apparently, led to some of the calls of which Plaintiff complained. (Id.)

Having reviewed the sampling protocol's results, the parties agreed to participate in private mediation. (Id. ¶ 38.) Following a full-day mediation on December 20, 2016, the parties reached a classwide settlement in principle. (Id. ¶ 39.) On July 28, 2017, Defendant provided responses to Plaintiff's confirmatory discovery. (Id.) In response to meet and confer between counsel, on November 6, 2017, Defendant provided supplemental responses to Plaintiff's confirmatory discovery, reporting that all Damages Settlement Subclass members had been included in the Damages Class list. (Id.)

On August 21, 2017, Plaintiff filed a motion for preliminary approval of class action settlement. (Doc. No. 55.) On October 16, 2017, the Court issued an Order certifying a provisional settlement class, preliminarily approving class settlement, approving class notice, and appointing Rust Consulting, Inc. ("Rust Consulting") as claims administrator.

---

[1] The Court's research suggests that these are predictive dialers.

(Doc. No. 60.) The Court appointed Plaintiff as class representative and Plaintiff's counsel as class counsel. (Id. at 8.) Plaintiff filed her motion for attorneys' fees, costs and incentive payment on December 27, 2017, and her motion for final approval of the class action settlement on March 5, 2018. (Doc. Nos. 61, 64.) A hearing was held on Plaintiff's motions on March 23, 2018. (Doc. No. 66.)

## II. The Proposed Settlement Agreement

The proposed settlement agreement would create an "Injunctive Settlement Class" as well as a narrower "Damages Settlement Subclass." (See Doc. No. 55-2, Marron Decl. Ex. 1 §§ 2.12, 2.19) ("Class Action Settlement Agreement and Release") (hereinafter "Proposed Settlement").) The Injunctive Settlement Class comprises "all individuals called by [Defendant] on their cellular telephones during the Class Period"—that is, "January 25, 2012 through and including the date the settlement is preliminarily approved," October 16, 2017. (Id. § 2.19.) The Damages Settlement Subclass consists of the 61,939 persons who "received one or more calls from [Defendant], (2) placed by LiveVox or TCN and/or featuring a prerecorded or artificial voice messages [*sic*]; (3) on his or her cellular telephone number; (4) was not listed in the patient or guarantor fields on the account in which calls were placed; (5) from January 25, 2012 through [October 16, 2017]; and (6) whose telephone numbers are identified in the Damages Class List." (Id. § 2.12.)

Under the Proposed Settlement, Defendant will establish a settlement fund of $1,500,000 (the "Settlement Fund") to resolve the litigation involving Damages Settlement Subclass members. (Id. § 6.01.) This amount will pay approved claims on a pro rata basis and any and all settlement costs, defined as "all costs incurred in the litigation by Plaintiff, including but not limited to Plaintiff's attorneys' fees, costs of suit, cost of litigation, cost of notice and claims administration." (Id. §§ 2.33, 6.01, 6.02.) For its attorneys' fees and costs, Plaintiff's counsel agrees to requests no more than 30% of the Settlement Fund. (Id. § 7.01.)

The Settlement Fund will also be used to pay the class representative an incentive award of $7,500. (Id. § 7.02.) Any amount remaining in the Settlement Fund as of the final

distribution date will go to a *cy pres* recipient "mutually selected by the Parties and subject to Court approval." (Id. § 10.04(f).) In its prior Order, the Court approved the Privacy Rights Clearinghouse ("PRC") as a *cy pres* recipient of undistributed settlement funds. (Doc. No. 60 at 14.)

As for injunctive relief, Defendant will consent to two injunctions against it. (See Proposed Settlement §§ 5.01, 5.02). The first injunction would require that Defendant, "in a uniform manner, record in its account management system all consent it receives to call cellular telephone numbers using its dialer(s), and retain all such documents or records of consent for a period of no less than two (2) years"; "use reasonable means (e.g., third-party databases) to search and scrub all such numbers to determine whether a given number is a cellular number" and "keep a record of all such numbers identified as a cellular number"; not call cellular numbers using its dialer(s) unless Defendant has a record of consent to do so; and not use pre-recorded or artificial voice messages unless Defendant obtains and records consent to do so. (Id. § 5.01.)

The second injunction contemplated in the Proposed Settlement pertains to Defendant's conduct in any future TCPA litigation brought by an Injunctive Settlement Class member. (See id. § 5.02.) Specifically, the injunction would bar Defendant from raising as a defense, or requiring said class member to establish, that the dialing equipment used to call a person's cellular telephone number was an "ATDS" as defined by the TCPA, provided that the call(s) involved in that claim were made from January 25, 2012 through the date of preliminary approval of the agreement. (Id.) This injunction would not, however, apply to such claims brought on a classwide basis. (Id. § 5.2.3.)

Class members can opt-out by submitting a written request to the claims administrator, and they can object to the Proposed Settlement by filing an objection to the Court. (Id. §§ 13.01, 13.02.)

//
//
//

# DISCUSSION

## I. Motion for Final Approval

### a. Class Certification

A class may be certified under Federal Rule of Civil Procedure 23(a) if (1) the class is so numerous that joinder of all members individually is impracticable; (2) questions of law or fact are common to the class; (3) the claims or defenses of the class representative are typical of the claims or defenses of the class; and (4) the person representing the class is able to fairly and adequately protect the interest of all members of the class. Rule 23(b)(3) further requires a finding "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."

In its Order certifying the provisional settlement class, the Court determined that the class met the requirements of Rule 23(a) and Rule 23(b)(3). (Doc. No. 60.) The class includes all individuals who "(1) received a telephone call from Defendant or its agents; (2) on his or her cellular telephone number; (3) through the use of any automatic telephone dialing system or artificial or pre-recorded voice system as set forth in 47 U.S.C. § 227(b)(1)(A)(3); and (4) where Defendant has no record of prior express consent for such individual to make such call, within four years prior to the filing of the Complaint through the date of final approval." (Doc. No. 1 ¶ 29.)

The settlement class meets the numerosity, commonality, typicality, and adequacy of representation requirements of Rule 23(a). The class is sufficiently numerous because the Damages Settlement Subclass alone contains 61,939 members, 44,744 of whom were sent Postcard Notices regarding the Proposed Settlement via U.S. mail. (Doc. No. 64-1 at 5-6; Doc. No. 64-3, Roberts Decl. ¶¶ 6-7.) See Rannis v. Recchia, 380 F. App'x 646, 651 (9th Cir. 2010) (mem.) ("In general, courts find the numerosity requirement satisfied when a class includes at least 40 members."). Common questions predominate because the primary common issue is whether Defendant used an ATDS or an artificial or pre-recorded

voice system to call cellular phones without recipients' prior express consent in violation of the TCPA. (See Doc. No. 1 ¶ 35.) See Bee, Denning, Inc. v. Capital All. Grp., 310 F.R.D. 614, 625-26 (S.D. Cal. 2015) (concluding that whether defendant sent fax advertisements in violation of the TCPA "clearly involves a common question of law that will drive resolution of the classwide claims"). There is no evidence that any purported class members gave prior express consent to Defendant's placement of the calls at issue, or that Defendant obtained the persons' cell phone numbers in the course of the underlying healthcare transactions in which the alleged debts were incurred. See Meyer v. Portfolio Recovery Assocs., LLC, 707 F.3d 1036, 1042 (9th Cir. 2012). Thus, the Court is satisfied that individualized issues of consent do not preclude a finding of commonality. Id. Furthermore, typicality is satisfied because both Plaintiff and the purported class members held the same position and claim the same injury—namely, that they received calls on their cell phones that were placed by Defendant using "LiveVox or TCN and/or featuring a prerecorded or artificial voice messages [*sic*]" without their prior express consent. (Doc. No. 55-1 at 7.) Because Plaintiff's claims are reasonably co-extensive with those of absent class members, the typicality prerequisite is met. And finally, the adequacy requirement is satisfied because Plaintiff and her counsel have vigorously prosecuted the interests of the class, (see Doc. Nos. 55-7, Gutierrez-Rodriguez Decl. ¶ 5; 61-10, Gutierrez-Rodriguez Decl. ¶¶ 5-11; 55-2, Marron Decl. ¶¶ 2-7), and class counsel has extensive experience in class actions and complex litigation, including TCPA cases, (see id. ¶¶ 35, 36).

The settlement class also meets the predominance and superiority requirements of Rule 23(b)(3). A single adjudication will resolve the central issue of the case—namely, whether Defendant violated the TCPA by calling class members, without their prior express consent, using an ATDS or an artificial or pre-recorded voice system. (Doc. No. 1 ¶ 35(a).) There do not appear to be individualized consent issues that should preclude a finding of predominance, given that the purported class is defined, specifically, as persons whose numbers were not listed as those of patients or guarantors—which indicates the class members did not give prior express consent to being called—and who received one or more

calls from Defendant placed by LiveVox or TCN "and/or featuring a prerecorded or artificial voice messages [*sic*]." (Proposed Settlement § 2.12.) Thus, the proposed class is "sufficiently cohesive to warrant adjudication by representation," and the predominance requirement is met. See Hanlon v. Chrysler Corp., 150 F.3d 1011, 1022 (9th Cir. 1998) (citation omitted). In addition, a class action is a superior method for resolving the dispute because it will reduce litigation costs and promote greater efficiency. See Valentino v. Carter-Wallace, Inc., 97 F.3d 1227, 1234 (9th Cir. 1996) (citation omitted).

Accordingly, the Court certifies a settlement class consisting of all individuals who "(1) received a telephone call from Defendant or its agents; (2) on his or her cellular telephone number; (3) through the use of any automatic telephone dialing system or artificial or pre-recorded voice system as set forth in 47 U.S.C. § 227(b)(1)(A)(3); and (4) where Defendant has no record of prior express consent for such individual to make such call, within four years prior to the filing of the Complaint through the date of final approval." (Doc. No. 1 ¶ 29.)

### b. Fairness and Adequacy of the Settlement

Before approving a class action settlement, the Court must determine whether the proposed settlement is fair, reasonable, and adequate. Fed. R. Civ. P. 23(e)(2). In reaching this determination, the Court must consider a number of factors, including: (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement. Churchill Vill., L.L.C. v. Gen. Elec., 361 F.3d 566, 575-76 (9th Cir. 2004).

The Ninth Circuit maintains a "strong judicial policy" in favor of settlement of class actions. Class Plaintiffs v. City of Seattle, 955 F.2d 1268, 1276 (9th Cir. 1992); see also Rodriguez v. W. Publ'g Corp., 563 F.3d 948, 965 (9th Cir. 2009) ("This circuit has long deferred to the private consensual decision of the parties." (citing Hanlon, 150 F.3d at

1027)). Nevertheless, when a settlement agreement is negotiated prior to formal class certification, settlement approval "requires a higher standard of fairness and a more probing inquiry than may normally be required under Rule 23(e)." Dennis v. Kellogg Co., 697 F.3d 858, 864 (9th Cir. 2012) (internal quotation marks omitted). The Court must also scrutinize the settlement for evidence of collusion or other conflicts of interest. In re Bluetooth Headset Prods. Liab. Lit., 654 F.3d 935, 946-47 (9th Cir. 2011).

### i. The Strength of Plaintiff's Case, the Risk of Further Litigation, and the Settlement Amount

Although Plaintiff is confident that she would prevail if this litigation continued, she acknowledges several "not-insignificant obstacles" to her doing so, including issues related to consent, Defendant's anticipated motion for summary judgment, Plaintiff's anticipated motion for class certification, and the likelihood of appeals. (Doc. No. 64-1 at 12-13.) These risks favor approval of the Proposed Settlement. Cf. Couser v. Comenity Bank, 125 F. Supp. 3d 1034, 1042 (S.D. Cal. 2015) (finding support for settlement where "there is a risk that the Class would either not be certified or that something may arise before trial to decertify the class").

Pursuant to the Proposed Settlement, Defendant must establish a non-reversionary Settlement Fund of $1,500,000, from which the class members' claims, class counsel's fees and costs, the Class Representative's incentive payment, and the administration costs will be paid. (Doc. No. 64-1 at 15-16.) Based on the number of valid claims that Damages Settlement Subclass members have submitted to date, the per-claim recovery is approximately $600, after deduction for the aforementioned costs. (Doc. No. 64-2, Gallucci Decl. ¶ 2.) Considering that the TCPA permits recovery of $500 per negligent violation, this benefit is substantial. See Aboudi v. T-Mobile USA, Inc., No. 12-CV-2169, 2015 WL 4923602, at *4 (S.D. Cal. Aug. 18, 2015) (finding $500 per claim a "substantial" benefit in TCPA class action settlement). Additionally, this per-claim recovery appears to be higher than the usual range for TCPA class action settlements. See Franklin v. Wells Fargo Bank, N.A., No. 14-CV-2349, 2016 WL 402249, at *5 (S.D. Cal. Jan. 29, 2016) (surveying

TCPA class action settlements and finding a range of $20 to $100 per claim). Furthermore, the Proposed Settlement provides for two-pronged injunctive relief that would prevent Defendant from committing further TCPA violations and would facilitate damages claims brought against Defendant by individuals not released by the present settlement. (Proposed Settlement §§ 5.01, 5.02.) Accordingly, the Proposed Settlement's monetary and injunctive relief support approval of the Proposed Settlement.

Any amount remaining in the Settlement Fund as of the final distribution date will go to a *cy pres* recipient "mutually selected by the Parties and subject to Court approval." (Id. § 10.04(f).) The Court previously approved PRC as an appropriate *cy pres* recipient. (Doc. No. 60 at 14.) A "driving nexus" exists between PRC and the plaintiff class, see Nachshin v. AOL, LLC, 663 F.3d 1034, 1038 (9th Cir. 2011), and a *cy pres* award to PRC would further the TCPA's objective "to prohibit the use of ATDSs to communicate with others by telephone in a manner that would be an invasion of privacy," Satterfield v. Simon & Schuster, Inc., 569 F.3d 946, 954 (9th Cir. 2009) (citation omitted); see Dennis, 697 F.3d at 865.

Balancing "the continuing risks of litigation (including the strengths and weaknesses of the Plaintiff's case), with the benefits afforded to members of the class, and the immediacy and certainty of a substantial recovery," the Court concludes that these factors favor approval of the Proposed Settlement. See Franklin, 2016 WL 402249, at *3.

### ii. The Extent of Discovery Completed, the Stage of Proceedings, and Lack of Collusion

The discovery process in this case involved extensive party and third-party discovery, extensive meet and confer efforts by counsel, and the development of a mutually agreed-upon sampling protocol to identify the unique telephone numbers constituting the Damages Settlement Subclass. (Doc. No. 64-1 at 17.) While developing and running the protocol, the parties agreed to participate in private mediation to explore the possibility of settlement. (Doc. No. 55-2, Marron Decl. ¶ 7.) A JAMS mediator with extensive experience with TCPA cases supervised a day-long mediation session, and the parties reached a

classwide settlement in principle. (Id. ¶¶ 8-9.) The parties then worked to finalize the settlement's terms over the next few months and also conducted confirmatory discovery to ensure the accuracy of the information Defendant provided during mediation. (Id. ¶ 10; see Doc. No. 64-1 at 17.)

Based on the record before the Court, there is no indication of collusion. The requested attorneys' fee award—28.8% of the Settlement Fund—is close to the benchmark percentage and does not signify a disproportionate distribution to class counsel. Similarly, the requested Class Representative's incentive award appears reasonable (as discussed below). Thus, because the Proposed Settlement appears to have resulted from arms-length negotiations and was not the result of collusion, it is presumed fair. See Couser, 125 F. Supp. 3d at 1042 ("A settlement following sufficient discovery and genuine arms-length negotiation is presumed fair." (quoting Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc., 221 F.R.D. 523, 528 (C.D. Cal. 2004))). This factor supports approval.

### iii. The Experience and Views of Counsel

Class counsel is experienced with TCPA actions and believes that Plaintiff's claims are meritorious, but also believes that the Proposed Settlement offers meaningful relief and is in the class's best interests. (Doc. No. 55-1 at 15; Doc. No. 55-2, Marron Decl. ¶¶ 20-21, 35-36; see Doc. No. 64-1 at 17-18.) This factor also supports approval. See Couser, 125 F. Supp. 3d. at 1044 ("Great weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation. This is because parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in the litigation." (citation omitted)).

### iv. The Reaction of Class Members to the Proposed Settlement

To date, no class member has objected to the Proposed Settlement, and one class member has requested exclusion. (Doc. No. 64-3, Roberts Decl. ¶ 11.) The complete lack of objections is indicative of the adequacy of the settlement. See DIRECTV, Inc., 221 F.R.D. at 529 ("It is established that the absence of a large number of objections to a

proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members."). Thus, the class members' reaction favors granting final approval.

### c. Conclusion

For the reasons set forth above, the Court finds that the Proposed Settlement is fair, adequate, and reasonable pursuant to Federal Rule of Civil Procedure 23(e), and therefore grants Plaintiff's motion for final approval of the class action settlement. (Doc. No. 64.)

## II. Attorneys' Fees, Costs and Incentive Payment

Plaintiff seeks attorneys' fees and costs of $450,000, or 30% of the anticipated Settlement Fund. (Doc. No. 61-1 at 5.) Phrased differently, Plaintiff seeks attorneys' fees in the amount of $432,600.47, and litigation costs in the amount of $17,399.53, totaling $450,000. (Id. at 21.) Thus, Plaintiff seeks approximately 28.8% of the Settlement Fund in attorneys' fees. (Id.)

Pursuant to Federal Rule of Civil Procedure 23, "[i]n a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). The Court has discretion to calculate and award attorneys' fees using the percentage-of-fund method or lodestar method. Couser, 125 F. Supp. 3d at 1045 (citing Vizcaino v. Microsoft Corp., 290 F.3d 1043 (9th Cir. 2002)). "It is well established that 25% of the gross settlement amount is the benchmark in the Ninth Circuit for attorneys' fees awarded under the percentage method," id. at 1046, but the Court may depart from this benchmark "when special circumstances indicate that the percentage recovery would be either too small or too large in light of the hours devoted to the case or other relevant factors," Six (6) Mexican Workers v. Ariz. Citrus Growers, 904 F.2d 1301, 1311 (9th Cir. 1990). Regardless of whether the Court applies the percentage method or lodestar method to calculate attorneys' fees, "the ultimate inquiry is whether the end result is reasonable" in light of all of the circumstances of the case. Franklin, 2016 WL 402249, at *6 (citing Powers v. Eichen, 229 F.3d 1249, 1258 (9th Cir. 2000)); see Couser, 125 F. Supp. 3d at 1045. Factors bearing on an award's reasonableness

include "(1) the results achieved; (2) the risks of litigation; (3) the skill required and the quality of work; (4) the contingent nature of the fee; (5) the burdens carried by class counsel; and (6) the awards made in similar cases." Id. (citing Vizcaino, 290 F.3d at 1048-50.) To prevent an unreasonable result, the Ninth Circuit encourages courts to cross-check their calculations against a second method. In re Bluetooth, 654 F.3d at 944-45.

Turning to the percentage method of recovery, Plaintiff requests attorneys' fees of $432,600.47, or approximately 28.8% of the Settlement Fund. (Doc. No. 61-1 at 21.) To determine whether such an upward departure from the 25% benchmark is reasonable, the Court considers the aforementioned Vizcaino factors. Couser, 125 F. Supp. 3d at 1045. First, Plaintiff achieved an excellent result for the class; based on the number of valid claims submitted, the recovery per claim is approximately $600. (Doc. No. 64-2, Gallucci Decl. ¶ 2.) This per-claim recovery appears to be higher than the usual range for TCPA class action settlements. See Franklin, 2016 WL 402249, at *5 (surveying TCPA class action settlements and finding a range of $20 to $100 per claim). Thus, the strong result achieved supports an upward departure from the benchmark. The Court finds further support for an upward departure in the substantial risks of continued litigation, as well as the high quality of representation by class counsel, who brought this case on a contingency basis and received no compensation for their efforts for the approximately two years this case has been pending. (Doc. No. 61-2, Marron Decl. ¶¶ 29-30.) Thus, the Court concludes that 28.8% of the Settlement Fund is a reasonable award in this case.

Application of the lodestar method confirms the reasonableness of this award. See In re Bluetooth, 654 F.3d at 944-45. Based on class counsel's requested hourly rates and the number of hours spent on the litigation, the lodestar figure is $160,986. (Doc. No. 61-1 at 18.) Plaintiff requests that the Court apply a multiplier of 2.687 to the lodestar, (id.), which is well within the 1 to 4 multiplier range commonly found to be appropriate in common fund cases, Aboudi, 2015 WL 4923602, at *7. Accordingly, the lodestar cross-check supports the reasonableness of the requested attorneys' fees award.

In addition to attorneys' fees, Plaintiff seeks $17,399.53 in costs. (Doc. No. 61-1 at

21.) The reported litigation expenses were for mediation, litigation services, copies, and travel. (Doc. No. 61-2, Marron Decl. Ex. 2.) After reviewing class counsel's declaration and the attached summary of the incurred litigation expenses, (id. ¶ 7, Ex. 2), the Court concludes that the requested expenses are reasonable and grants class counsel's request for these costs. See Ontiveros v. Zamora, 303 F.R.D. 356, 375 (E.D. Cal. 2014) ("There is no doubt that an attorney who has created a common fund for the benefit of the class is entitled to reimbursement of reasonable litigation expenses from that fund." (citation omitted)).

Moreover, Plaintiff seeks an award of $124,000 for the costs incurred by Rust Consulting in administering the claims and notice in this matter. (Doc. No. 64-1 at 7 n.5; Doc. No. 64-3, Roberts Decl. ¶ 12.) The requested costs are to be paid out of the Settlement Fund. (Doc. No. 64-1 at 7 n.5.) The administration costs appear to be reasonable and are, therefore, approved.

Finally, the Court determines that the requested $7,500 incentive payment for class representative Belinda Gutierrez-Rodriguez is reasonable. (Doc. No. 61-1 at 22.) Incentive awards in class action cases are discretionary "and are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." Rodriguez, 563 F.3d at 958-59. The Court must "scrutinize carefully the awards so that they do not undermine the adequacy of the class representatives." Radcliffe v. Experian Info. Sols. Inc., 715 F.3d 1157, 1163 (9th Cir. 2013). Here, in her sworn declaration, Ms. Gutierrez-Rodriguez states that she has been active in this litigation since its inception, providing class counsel with critical information regarding the calls she received from Defendant, responding to discovery requests, and conferring with class counsel about mediation and the Proposed Settlement. (Doc. No. 61-10, Gutierrez-Rodriguez Decl. ¶¶ 3-9.) Considering this participation, as well as the acceptable range of incentive awards in similar cases, see Fulford v. Logitech, Inc., No. 8-CV-2041, 2010 WL 807448, at *3 n.1 (N.D. Cal. Mar. 5, 2010), the Court approves the $7,500 incentive payment for Ms. Gutierrez-Rodriguez. Thus, in sum, the Court grants

1 | Plaintiff's motion for attorneys' fees, costs and incentive payment. (Doc. No. 61.)

## **CONCLUSION**

The Court has jurisdiction over the subject matter of this action and all parties to the action, including all settlement class members. The Court certifies the settlement class and grants final approval of the settlement. All persons who satisfy the class definition are settlement class members bound by this judgment. The form and method of notice satisfied the requirements of the Federal Rules of Civil Procedure and the United States Constitution, including the Fifth Amendment's Due Process Clause.

The Court grants class counsel $450,000 in attorneys' fees and litigation costs. The Court also grants $124,000 in administration costs. The Court grants class representative Belinda Gutierrez-Rodriguez an incentive payment of $7,500. The attorneys' fees and costs, administration costs, and incentive award will be paid out of the Settlement Fund.

The Court reserves jurisdiction over the implementation, administration, and enforcement of this settlement and all matters arising thereunder. This document satisfies Rule 58 of the Federal Rules of Civil Procedure. The Court dismisses the action with prejudice, and no costs shall be awarded other than those specified in this order, or provided by the settlement agreement. The Clerk of Court shall close this case.

**IT IS SO ORDERED.**

DATED: March 26, 2018

MARILYN L. HUFF, District Judge
UNITED STATES DISTRICT COURT